**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DAVID M. SUIRE,<br><br>Plaintiff,<br><br>v.<br><br>LT. SAID CHAKRI, *Maintenance Supervisor*,<br><br>Defendant. | Civil Action No.: SAG-25-2626 |

**MEMORANDUM OPINION**

Plaintiff, David M. Suire, who is currently incarcerated at Maryland Correctional Training Center (MCTC), brings this civil rights action pursuant to 42 U.S.C. § 1983 against Lt. Said Chakri for events that occurred while Suire was incarcerated at the Maryland Correctional Institute at Jessup (MCI-J). ECF No. 15.

Suire originally filed suit against the Department of Public Safety and Correctional Services (DPSCS), Lt. "Shockery" (later corrected to Chakri), Robert Cangilio, Warden Tanya Parker, and Samuel George. ECF No. 1. The Court dismissed DPSCS pursuant to 28 U.S.C. § 1915(a)(2) and directed Suire to amend his Complaint. ECF No. 5. In his First Amended Complaint, Suire voluntarily dismissed Defendants Parker and George. ECF No. 8. The Court again directed Suire to amend his Complaint using the Court's form. (ECF No. 14). Suire filed a Second Amended Complaint that names Lt. Chakri as the sole Defendant. ECF No. 15.

Pending before the Court is Lt. Chakri's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 22) and his Motion to Seal exhibits "B" and "C". ECF No. 24. Also pending before the Court is Suire's Motion for Leave to Amend his Complaint for a fourth

time to name as additional Defendants the warden of MCTC, Cleveland Friday, Centurion Group Inc., Dr. Jahed, and Molly Nicholes. ECF No. 26. The motion is opposed. ECF No. 27.

This matter is now ripe and ready for review. For the reasons discussed below, Lt. Chakri's Motion to Dismiss or in the alternative Motion for Summary Judgment (ECF No. 22), will be granted in part and denied in part. The Motion to Seal (ECF No. 24) will be granted.[1] The Court appoints counsel to represent Suire. Subject to the appointment of counsel, Suire's Motion for Leave to Amend (ECF No. 26) will be denied without prejudice.

## I. Complaint Allegations

Suire alleges that on April 1, 2025, while incarcerated at MCI-J and working in the maintenance department, he was ordered by maintenance supervisor, Lt. Chakri, to change a "busted" sprinkler head in abandoned Building "A." ECF No. 15 at 4. Suire states that he advised Lt. Chakri that an outside contractor should be called to perform the task because it would set off the alarm system and the fire department would respond. *Id.* Lt. Chakri told Suire that another incarcerated individual, Steven Jackson, had turned off the system, and he could not wait on the "red tape" of an approval. *Id*. He ordered Plaintiff to get it done. *Id.* When Suire removed the sprinkler head, "stale water and rust busted out of the system with extreme pressures" and Suire tripped on some old beds and metal boxes, injuring his right leg. *Id.*

Suire states that Lt. Chakri's response to his injury was "well you had your shower for the day." *Id.* Suire also states that he asked Lt. Chakri why he lied to him about the water being off and adds that Jackson did not even know how to turn it off. *Id.* In response, Lt. Chakri's advised Suire to submit a sick call. *Id.* at 5. Suire saw the doctor, *id.*, who found injuries to his right ankle,

[1] The Motion to Seal is unopposed and, appears to meet the requirements of Local Rule 105.11.

foot, knee, leg, and Achilles tendon. *Id.* Suire states that the injury has limited his earning capacity. *Id.* at 10.

Suire's Second Amended Complaint includes additional allegations that he was exposed to other hazardous conditions during his maintenance job at MCI-J from August of 2024 through July of 2026. *Id.* at 4-8. He states that he was exposed to high voltage when he was made to change out electrical motors and capacitors, work which he asserts was only appropriate for licensed contractors. *Id.* He states that this work put him at risk of death. *Id.* Suire adds that he was directed to perform electrical work without the legally required "lock-out" system in place because the keys could not be located. *Id.* at 6-7.

Suire states that he also performed work on the kitchen plumbing that was not conducted safely and caused him to suffer burns. *Id.* at 5. He was made to cut down drains that resulted in raw sewage draining "into the local bays and streams!" *Id.* Suire also states that he was directed to snake a sewer line that was full of medical waste, including used needles that exposed him to infectious disease. *Id.* Suire lists incidents when he was directed to work in a manhole without confined space training (*id.* at 7) and was asked to adjust the head pressure on two boilers. *Id.*

Suire alleges that Lt. Chakri had full knowledge of the dangerous conditions to which Suire was exposed although Suire told Lt. Chakri on multiple occasions that outside contractors should be used (*id.* at 6), and Defendant Chakri "did these acts deliberately with no regards for [Suire's] health or safety." *Id.* at 8.

Suire states that Lt. Chakri initiated a plot to fire him once he learned that Suire had suffered a "real injury" from changing the sprinkler head. *Id.* at 8. He states that Lt. Chakri falsely claimed that Suire was "high," so Suire requested drug testing and submitted Administrative Remedy

Requests (ARPs) to no avail. *Id.* Suire also states that Lt. Chakri arranged for another incarcerated individual to threaten him. *Id.* at 8-9.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same

time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Fed. R. Civ. P. 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Lt. Chakri filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Suire was on notice that the court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the Court will review the claims against Lt. Chakri under the Fed. R. Civ. P. 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

The Court informed Suire that he may file an opposition and advised him of the consequences of failing to do so. ECF 25. Suire has filed an opposition. ECF No. 28. Because Suire's complaint is verified, its factual assertions may also be considered in opposition to defendants' motion. See *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P.

56(c)(1)(A).

The Court is mindful that Suire is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**DISCUSSION**

Lt. Chakri asserts that he is entitled to Eleventh Amendment immunity to the extent Suire has sued him in his official capacity; the complaint fails to state an Eighth Amendment claim for deliberate indifference because Suire fails to allege a serious injury or that Lt. Chakri knew about and disregarded a serious risk to Suire's health or safety; the retaliation claim should be dismissed because Suire has failed to show that his termination was caused by the exercise of a constitutionally protected right; and the complaint should be dismissed because Lt. Chakri is entitled to qualified immunity.

**A. Official Capacity**

Suire has sued Lt. Chakri in his official and individual capacities. ECF 15 at 8. Lt. Chakri has asked the Court to dismiss the official capacity claim against him on grounds of Eleventh Amendment immunity. ECF No. 22 at 8-9.

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment

immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. To the extent that Suire has asserted a claim against Lt. Chakri in his official capacity, Lt. Chakri is immune from suit for actions taken in his official capacity and that claim is dismissed

**B. Deliberate Indifference**

Lt. Chakri seeks dismissal of the Second Amended Complaint, asserting that Suire's allegations of exposure to risk of harm to his health and safety are insufficient to state an Eighth Amendment claim. ECF No. 22.

Generally, conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth

Amendment requires an allegation of "a serious or significant physical or emotional injury resulting from the challenged conditions, *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993), or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *De'Lonta*, 330 F.3d at 634 (citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)); *see also Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298–99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N. Carolina Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Lt. Chakri first argues that Suire's Eighth Amendment deliberate indifference claim should be dismissed because the alleged injuries to his leg are not serious enough. ECF No. 22 at 11-12. But Lt. Chakri fails to recognize the disjunctive nature of the standard:

> a serious or significant physical or emotional injury resulting from the challenged conditions, ***or*** demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions.

*De'Lonta*, 330 F.3d at 634 (emphasis added). Here, Suire has alleged that he was exposed to the risk of serious bodily injury and death during his work assignments, including electrocution, suffocation, burns, and exposure to infectious disease. With respect to the sprinkler head incident on April 1, 2025, Suire has alleged that he was exposed to risk of serious bodily harm from high water pressure under the conditions in which he was directed to perform his work assignment. The

Court need not analyze the seriousness of Suire's injuries because he is not required to allege an injury at all to state a claim under the Eighth Amendment for exposure to a substantial risk of serious harm.

Lt. Chakri next argues that Suire cannot establish the subjective element of the standard because "there is nothing about these allegations that show that, in ordering Plaintiff to perform maintenance tasks per his job assignment, Chakri knew that the 'plaintiff inmate faced serious danger to his safety and Chakri could avert the danger easily.'" ECF No. 22 at 12. This argument fails to acknowledge Suire's allegations regarding the apparent nature and level of risk exposure Suire described in his work assignments. The argument also fails to acknowledge that Suire has alleged that he was repeatedly exposed to substantial harm and possible death, Suire warned Lt. Chakri that the tasks should be performed by licensed contractors, and that Lt. Chakri knew he was assigning these tasks to incarcerated individuals, including Suire, who lacked the relevant experience. These allegations plausibly state a claim that Lt. Chakri had a culpable state of mind.

As for the April 1, 2025 sprinkler head incident, Suire alleges in detail that Lt. Chakri knew that he was exposing Suire to harm. Suire alleges that Lt. Chakri began the task by verbalizing a desire to cut corners and avoid the "red tape" that would be required to do the job correctly. Suire then alleges that Lt. Chakri sent an inmate who did not know how to shut off the water to perform that task. He alleges that he asked Lt. Chakri why he lied about the water being shut off and he also alleges that Lt. Chakri's response to his injury was to joke that he "had [his] shower for the day." ECF No. 15 at 4.

Suire has stated a claim for deliberate indifference to his health and safety under the Eighth Amendment. Moreover, Lt. Chakri has failed to supply any support for a conclusion that there is no genuine issue of material fact, and he is entitled to judgment as a matter of law on this claim.

In his opposition, Suire argues that he has made attempts to gather relevant documents without success. ECF No. 28 at 2. Suire contends that discovery is necessary and available to establish his claim, such as contracts, policies and procedures, work orders, and fact witness depositions. *Id.* at 1, 4. Suire contends that he can demonstrate with discovery that the work Lt. Chakri directed him to perform was against DPSCS written policy and points out the Fourth Circuit requires that discovery be permitted when the non-moving party has not had the opportunity to access information essential to his opposition. *Id.* at 1-4.

Indeed, the Fourth Circuit has warned against granting summary judgment where "the district court [is] aware of a potential need for discovery" and a pro se plaintiff has made a request for discovery (regardless of the form of that request). *Farabee v. Gardella*, 131 F.4th 185, 196 (4th Cir. 2025). Many factual questions remain before Suire's Eighth Amendment deliberate indifference claim can be resolved and no discovery has been conducted in this matter.

The Court takes judicial notice of the fact that Governor Wes Moore announced just a few months after the events alleged in Suire's Second Amended Complaint that the State of Maryland was closing MCI-J.[2] The press release, dated September 29, 2025, states in part:

> MCI-J has long outrun its facility lifespan and we refuse to kick the can further down the road…Over the years, prolonged underinvestment in routine and preventative maintenance have contributed to building and infrastructure degradation across the facility…the physical plant is in need of extensive repairs….facility plumbing, electrical systems, and roofing are past life cycle expectancy…After careful evaluation, the decision to close MCI-J is a fiscally responsible step for our state.

*See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (the court may properly take judicial notice of matters of public record). Under the circumstances, genuine issues of

[2] https://governor.maryland.gov/news/press-releases/governor-moore-announces-plan-close-maryland-correctional-institution-jessup

material fact exist and factual discovery is warranted before summary judgment can appropriately be considered on Suire's Eighth Amendment deliberate indifference claim.

**B. Retaliation**

Suire states that after he was injured changing the sprinkler head, Lt. Chakri "knew he messed up, so he started plotting to fire me; said I was getting high, so I requested a drug test by sick call, ARP and letters to Adm dept. for testing to no avail." ECF No. 15 at 8. It is unclear whether Suire is asserting a separate claim here. In any event, Lt. Chakri argues that Suire has asserted a retaliation claim and it should be dismissed. ECF No. 22 at 14-16.

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To establish a retaliation claim for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) "incarceration does not divest prisoners of all constitutional protections" *id.* at 228. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). The United States Court of Appeals for the Fourth Circuit

has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

Lt. Chakri attached documents to his motion that demonstrate Suire was fired from his maintenance job on April 8, 2025. ECF No. 22-6 at 6. This is seven days after Suire has alleged he was injured changing the sprinkler head. ECF No. 15 at 4. Ten days after Suire was terminated, on April 18, 2025, Suire filed an ARP stating:

> On Monday 4-7-2025, I came to work at Maintenance Dept. II Elect. Went to C Building with my escort Sgt. George went into cell 107 & 214 repaired lights and wires burnt out by its smoking was told afterwards to take off 20 mins like I was high! I was not so I asked, if you think I'm high drug test me. I got fired.

*Id.* at 4. On April 25, 2025, Suire filed another ARP complaining that he went to the maintenance department on April 16, 2025, to speak to Lt. Chakri and another officer about the manner of his termination and its reason. *Id.* at 9-10.

The two ARPs in the record were filed after Suire was fired, so he cannot show that he was fired because he filed those ARPs. Suire has not identified any constitutional protected activity that occurred prior to his termination that could have been the basis of a retaliation claim. Summary judgment is granted for any First Amendment retaliation claim; to the extent Suire made one. *See Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (affirming the dismissal of a prisoner's retaliation claim where the claim failed to demonstrate that the allegedly retaliatory acts were punishment for the exercise of a constitutional right).

Lt. Chakri also argues that Suire does not state a constitutional claim for the loss of his prison job in the maintenance department. ECF No. 22 at 14. The Court agrees. *See Altizer v. Paderick*, 569 F.2d 812, 813–15 (4th Cir. 1978) ("the classifications and work assignments of prisoners in such institutions are matters of prison administration, within the discretion of the prison administrators, and do not require fact-finding hearings as a prerequisite for the exercise of

such discretion"); *Bennett v. Wolfe*, No. CV JKB-16-4069, 2018 WL 999917, at *7 (D. Md. Feb. 20, 2018), *aff'd,* 731 F. App'x 230 (4th Cir. 2018) (collecting cases) ("Bennett has no constitutional right to prison employment and has no liberty interest in being assigned to a specific job"); *Green v. Wilson*, No. CV PWG-15-3866, 2018 WL 3629970, at *7 (D. Md. July 31, 2018) ("Mr. Green has no constitutionally protected right to a prison job or to remain in a particular job once assigned"); *see also Clark v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 281 (4th Cir. 2009) (affirming the District Court's conclusion that prisoners do not have a constitutionally protected right to work while incarcerated).

**C. Qualified Immunity**

Lt. Chakri alternatively argues that he is entitled to qualified immunity. ECF No. 22 at 17. This argument also fails. Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013), *as amended* (Sept. 23, 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome a claim of qualified immunity from a § 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (citations

omitted). If the Court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

Suire alleges that Lt. Chakri exposed him to a substantial risk of harm in his prison work assignments from August of 2024 through July of 2026. By that point, the Supreme Court had ruled generally in *Farmer* that a prison condition that creates a "substantial risk of serious harm" can violate the Eighth Amendment. *Farmer*, 511 U.S. at 828. Also, by that time, the United States Courts of Appeals for the Second, Sixth, Seventh, Eighth, Ninth and Tenth Circuits had all ruled specifically that subjecting an inmate to dangerous work conditions at his prison job can constitute an Eighth Amendment violation. *See Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987*); Rhodes v. Michigan*, 10 F. 4th 665, 679- (6th Cir. 2021); *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004); *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017); *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 736 (10th Cir. 2005). A consensus among courts that provide persuasive authority can support a finding that a rule is clearly established law. *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017). Based on these decisions, reasonable correctional personnel could not have believed that exposing an inmate to a risk of serious injury or death in his work assignment was lawful. Lt. Chakri is not entitled to qualified immunity as to Suire's Eighth Amendment claim.

## II. Conclusion

For the foregoing reasons, Lt. Chakri's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 22), is granted in part and denied in part. The claims against Lt. Chakri in his official capacity are dismissed with prejudice. Summary judgment is granted for the claims against Lt. Chakri for retaliation. Lt. Chakri's motion is denied in all other respects to allow

Suire to pursue discovery. Lt. Chakri's Motion to Seal (ECF No. 24) is granted. Counsel shall be appointed to represent Suire in this matter. Because of the appointment of counsel, Lt. Chakri's Motion for Leave to Amend (ECF No. 26) is denied without prejudice.

A separate Order follows.

/s/

Date October 16, 2026

Stephanie A. Gallagher
United States District Judge